All right, good morning, everybody. Welcome to this remote session of court for the United States Court of Appeals for the Fourth Circuit. We have three cases on for hearing this morning. First up, 25-2087, Fairfax County School Board versus Secretary of Education, Linda McMahon. Mr. Heafey, I hope I pronounced that right. Whatever you read. It's Heafey with a long name. Heafey, all right. Whenever you're ready, sir. Thank you, Your Honor. May it please the court. I am Tim Heafey. I'm here from the firm of Heafey, Smith, Harbach, and Windham. I represent the Arlington Public Schools and the Fairfax County Public Schools. Your Honor, we initiated this litigation back in August of this year because of an underlying policy dispute that our clients have with Secretary McMahon, the defendant, Department of Education, over the school's policy providing access to facilities based on gender identity. Our clients believe that that policy is consistent with the Constitution, the Equal Protection Clause, Title IX, and this court's precedent in Grimm and affirmed recently in Doe. The defendants disagree with that and have issued a letter of findings and a high-risk designation alleging that the school's policy violates Title IX. We're not here today, Your Honor, to ask Your Honors to adjudicate that policy dispute. We are here to talk about where, appropriately, that policy dispute should be litigated, but it's important to start with the policy dispute because it informs that question as to where this case should be litigated, in the district court pursuant to the Administrative Procedures Act or in the Court of Federal Claims consistent with the Tucker Act. I want to start, if I can, with this court's recent opinions in the Sustainability Institute case and solutions in homegrown connections because they had talked about that line between the APA and the Tucker Act. Our case differs from those two clear precedents of this court in three significant ways. First and foremost, this case does not involve a termination of funds. There have been no funds yet withheld from Fairfax County or Arlington public schools. What has happened, Your Honor, is that the department, as I said, issued a high-risk designation based on what we purport is an incorrect interpretation of Title IX. They have said you can only get federal funds by reimbursement and significantly, and this is the key portion of the high-risk designation letter, they impose conditions on continued availability of those funds. They say that- Mr. Hanke, can I interrupt? Sorry to interrupt you, but- Yes, please, Your Honor. I appreciate the update with respect to the fact that there have been no funds that have yet been terminated, but I suppose that's possibly in the offing down the road. Would the result of this case be any different if there had been funds terminated, or would you still be arguing that the district court had jurisdiction over some aspects of this case? Yes, Your Honor, we would still be arguing that the district court had jurisdiction over some aspects of this case. The prospective application of Title IX, what courts have done since the Supreme Court's emergency docket decisions has essentially bifurcated claims and said claims for retrospective relief, the reimbursement of funds previously allocated, should go to the Court of Federal Claims. But prospective direction to the government as to interpretation of law should continue to stay in the district court. So we would be- Okay, so let me ask you about that. So is that result consistent with our recent precedent, in particular, sustainability, which, of course, the author of that opinion is here today, so she can correct you and I were wrong about that. But do you think that divvying up the case in that way is consistent with that precedent? Yes, yes, Your Honor. I think it's entirely consistent with that precedent, because again, that precedent did not involve a fundamental interpretation of law. The Sustainability Institute case, and then the second Solutions and Homegrown Salute Connections case involved categorical termination. The only law to be determined by the court in that case was the provisions of the grant agreements themselves, the actual contract between the plaintiff, non-profit organization, grant recipients, and the government. That's fundamentally different from what's at stake here. There's no question that our clients have been- Can you talk about the difference? You seem to be trying to draw two distinctions there. One, before the chief started asking questions about whether it's prospective or retrospective, but then you seem to transition away from that, because I think for good reason, into one about whether it's a legal interpretation or not. Can you separate those two for me? Which are you arguing, or are you suggesting sustainability is distinguishable both because nothing in Sustainability Institute was prospective and nothing in Sustainability Institute involved law? Both, Your Honor, exactly. Both of those facts, the fact that Sustainability Institute involved grants that had already been terminated and the plaintiffs were seeking repayment of those grants, that's one- Prospective, that's prospective relief, right? That's retrospective relief because the funds had been withheld and the plaintiffs were asking for essentially repayment of something that had already occurred. Nothing's been withheld. Your position is Sustainability Institute, and you could say the same thing about DOE and NIH, that all they sought were retrospective payments. They were not seeking continued payments of the grants in future months. That all they wanted was retrospective relief. That your position is that all of those cases involved in effect, retrospective damages and not a command to perform the grants going forward. That's right, Your Honor. My understanding, and this is true in these cases across the country, is that the courts that have sent these cases to the Court of Federal Claims have said, all that's before the Court of Federal Claims is a contract obligation, whether or not these amounts are owed. Prospective determination is not affected by the litigation involving the retros. That is fundamentally a separate question that goes elsewhere. And since the Supreme Court shadow docket cases, the case in California, the California case itself, which is being- Just so that I, I just wanna make sure I understand your argument. Hypothetically, except that I disagree with the premise that those cases were not purely retrospective. Can you just articulate in this hypothetical world where that was wrong? What the second argument that you're making is and how it's distinct? Yeah, Your Honor, I guess the best way to do that is to call your attention to what happened in the California case, the California versus Department of Education case. That is the case that on remand after the Supreme Court's emergency docket case was sent back to the trial judge where the Supreme Court said, hey, these retrospective claims you are making belong in the Court of Federal Claims. The trial judge in Massachusetts in California said, I'm not going to adjudicate those claims for pre-existing grant obligations, which have been withheld, but I'm going to keep jurisdiction and continue to contemplate resolving whether or not the underlying source of law does or does not prospectively give rise to further claims. So it's bifurcated, the retrospective claims go to the Court of Federal Claims, the prospective claims stay within the District Court for jurisdiction. That's essentially the rule I'm asking this court to adopt because it is logically consistent with the shadow docket, California and NIH case, as well as the two Fourth Circuit cases. Mr. Haifey, I appreciate that. I want to take you back to Bowen because this whole thing seems to be, the recent cases all seem to put a gloss on Bowen and without expressly overruling it, it seems like the law has changed. Because as I read Bowen, the court seemed to be pretty clear that if you're seeking reimbursement or grants, in that case, I think it was Medicare or Medicaid grants that have not been paid, that that's not quintessentially a contract damages claim, but is something else. And because it's something else, both it and the prayer for prospective relief are properly in the District Court. We seem to have moved away from that now to sort of bifurcate claims, depending on what sort of relief is being sought, which frankly, I think is a little bit confusing and not, but be that as it may, we're bound, I suppose, by whatever the Supreme Court has said since Bowen. But why isn't it the case that a judgment in the Court of Federal Claims entitling you or any other entity denied grant money would not have res judicata or collateral effect with respect to any prospective relief? Why isn't that the proper remedy? Yeah, Your Honor, we do not believe that the Court of Federal Claims would have jurisdiction in this case, despite Judge Alston's finding that this case should have been filed in the Court of Federal Claims. We don't believe that the Court of Federal Claims could contemplate this case. A, there is no privity of contract between Fairfax and Arlington and the Department of Education. These are grants, much like those in Bowen, where the federal government provides money in a formula to states. But hasn't the Supreme Court subsequently said that that's a distinction that doesn't matter? It may not be a pure contract in the commercial sense, but it has all the indicia, this grant process has all the indicia of a contract. It's contract-like, and that's enough for its purposes. Yeah, yes, Your Honor, the grants at issue, again, in the shadow docket cases were direct grants to the individual entities, the states and the plaintiffs in those cases. Again, we are, in the past, the situation from Virginia, and the Supreme Court shadow docket cases did not overrule Bowen. They tried to reconcile it. But we don't believe that because we don't have a contract, we could go to the Court of Federal Claims. And then secondly, and more significantly, the Supreme Court of Federal Claims. Can you just tell me what I would look to to understand the Tucker Act to demand privity? Right, what's the, what would I, what Court of Federal Claims case or federal circuit case or what would I look at to understand? Yes, Your Honor. Acquire privity. I'm sorry, Your Honor, I'll call your attention to Todd versus United States in the federal circuit. Consequently, appellants do not have a contract with the United States and cannot base a claim for money damages against the United States on a contract to which they are not a party. That's a federal circuit case cited in our brief. This very same line was recently adjudicated in the AAUP versus Trump case in California. The Tucker Act is inapplicable for the additional reason that plaintiffs cannot bring a contract claim as non-parties to the grant agreements. Under the Tucker Act, the Court of Federal Claims has jurisdiction only if there is privity of contract between plaintiffs and the government. When no such privity exists between plaintiffs and the government, the Court of Federal Claims jurisdiction does not cover the dispute. So again, Your Honor, the nature of these grants take this case out of the jurisdiction of the Court of Federal Claims. And then also significantly, the Court of Federal Claims cannot provide the prospective injunctive relief. The Bowen case itself says the Court of Federal Claims does not have general equitable powers of a district court to grant prospective relief. We've stated categorically, the CFC has no power to grant equitable relief. We are not willing to assume that a naked money judgment against the U.S. will always be an adequate substitute for prospective relief fashioned in the light of the rather complex ongoing relationship between the parties. What equitable relief are you seeking here? You know, we've said in recent cases that the fact that a party is seeking relief the Federal Circuit can't grant doesn't mean, or that the Court of Federal Claims can't grant doesn't mean that the claim doesn't belong there, right? Congress limited the remedies for breach of contract and specific performance may not be allowed. But in those cases, grants have been canceled and parties were seeking specific performance of those grants. They wanted them reinstated. Here, what you're seeking seems different, right? The terms of your contract have been changed because the federal government thinks your client's violating Title IX. So there's the dispute about whether you're violating Title IX and what the terms of that contract should be. That sort of relief, where does, how does that play into that difference in relief? How does that play into the distinction between this case and our prior cases about this topic? Your Honor, that is the crucial question because what we are facing is essentially a sword of Damocles hanging over the heads of the school divisions. And we need judicial intervention to essentially remove the sword, right? What has happened here- I mean, you may or may not get judicial intervention. Like maybe even the district court can't hear this because it's not right or something, I don't know. But the question is like, where does it belong? Like why would the Court of Federal Claims be the place to determine whether the federal government can add a condition to your contract or not? Because Your Honor, what it involves is not the terms of a contract, which is appropriate for adjudication in the Court of Federal Claims, but rather the substantive interpretation of Title IX and the Equal Protection Clause. That is appropriately, uniquely under the Administrative Procedures Act. A question for an Article III district court. This is not simply does the grant recipient abide by the terms of the grant. It is the department imposing an unlawful, unconstitutional condition upon those federal funds. That is why the nature of this dispute, it's not simply a dispute in contract, it is a substantive dispute about Title IX. And that is what separates this from Sustainability Institute and from the shadow docket cases. They did not involve that substantive disagreement as to the scope of Title IX. That is why we believe this is, that sword hanging overhead can only be essentially resolved by a trial court, not the Court of Federal Claims because of the fundamentally different nature of it. Can I follow up on a point that Judge Rushing made regarding ripeness, which I know is not before us, but I think this implicates what has happened so far. You've said that grants haven't been denied outright. Instead, the model has changed to require you to seek reimbursement as opposed to receiving advanced payment. That's the case. What relief could a district court provide if in fact that method of payment is left to the discretion of the agency or do you disagree that that's an issue that we have no jurisdiction or district court would have no jurisdiction over? We would be seeking a declaratory judgment and an affirmation, Your Honor, by the district court that our interpretation of Title IX, consistent with this court's authority in Grimm and Doe, is correct. Essentially removing the sword from over our head and the dilemma, the insoluble dilemma of violate Title IX to keep federal funds would be resolved. It is the equitable relief of a declaration affirming our interpretation. We think our clearly correct interpretation of Title IX preserves the federal funds. That is the relief that we see. All right, I'll ask my colleagues if they have any additional questions. Thank you very much. You have some time left for rebuttal. Thank you. Mr. Combley. Thank you, Your Honor. The plaintiffs in this case rushed into federal court asking for a TRO because based on their thoughts, they were on the verge of, in their perspective, losing some funding. But they did it without establishing the jurisdiction of the federal district court. And the district court properly dismissed the case and that order should stand. So I'm gonna go a little bit out of order based on the questioning from the panel, my friend on the other side. I'll start with kind of the dual track argument and then get into why 1683 does not provide an end around to the Tucker Act as well as the other grounds for relief. So one of the big things that defendants seem to shift over to, so first off, their argument that grants are not contracts, that's foreclosed by the recent Supreme Court precedent in Department of Education and NIH and Sustainability Institute also forecloses that argument. So what it appears to be based on their 28-J letter is this idea of potentially a dual track where the high-risk designation could be reviewed in a federal district court versus any funding termination or issue regarding that potentially being in the court of federal claims. And I have five things I wanna highlight on that. So first, the reason that the dual track issue came up in the NIH case is because there was separate generally applicable policy guidance that preceded the termination letters in that case. So when you talk about generally applicable guidance that applies to everyone versus the specific grant termination document, that's the reason that Justice Barrett talked about a dual track. Here, you don't have that. You have one letter. I'm sorry to interrupt you, but I guess I need to go back and look at that. But why would that matter? What's the distinction that's being made there? Yes, Your Honor, because general policy guidance that agencies come out with, internal guidance as Justice Barrett described it, that's generally challengeable under the APA, but she said that the resulting grant terminations, which was a separate document, it was a form letter that terminated the grant. Well, isn't the general policy guidance here the sort of regulatory and statutory violations or alleged violations of Title IX, which apply to everybody? I mean, that's what the department's attempting to enforce. No, Your Honor, basically the letter that plaintiffs challenge is a letter that says, we're putting you on this high risk designation and adding a condition to your funding. So when you look at kind of the prayers for relief in regards to that, in plaintiff's complaint, it's one of the prayers for relief is, require that defendants immediately pay to FCPS any funds that have been denied pursuant to defendant's August 19th, 2025 letter, JA39. So it looks towards what the essence of the claim is. And this court also addressed the issue in the solutions for hometown care case, which came out right after Sustainability Institute, where there was a policy memorandum from the Secretary of Homeland Security, followed by a freeze letter, and then followed by a termination letter. This court concluded that all of that, that the dismissal for that was appropriate because they ultimately all went towards the grant termination. So we look towards why they're in court in the first place. Can you, and again, I'll go back and look at NIH. Can you point me to the distinction that you claim Justice Barrett made in that case? Or is it just your gloss on the language that's used? So she did separate the policy guidance from the resulting grant terminations. And the way that the majority of the court's opinion kind of laid out the paragraphs of what they were enjoying in the district court order and the paragraphs that talked about the underlying policy guidance was not state, but the resulting grant terminations were what was state. And this also kind of leads me to my next point about the prospective versus retrospective relief. I don't want to mess with your argument order because I know you said you'd get there, but talking about a dual track approach seems to assume that some part of this case belongs in the Court of Federal Claims, which as I understand your argument, the part that belongs there would be any request for funds. But I am kind of stuck there because Title IX and the General Education Provisions Acts provide very specific routes for appealing decisions to terminate or withhold funds. I guess withhold when you still have a contract, right? There's still an open account between these parties. The grant hasn't been canceled. If the Department of Education withheld funds from these schools as part of this enforcement action, they could appeal that directly to us, right? That would go to the Court of Appeals. So, Your Honor, there's two things if Your Honor is referencing 20 U.S.C. 1683. Right, and 1234, right? Yes, Your Honor. Yeah. So basically, the first sentence of 1683, which links to 1234G, refers to a completed action.  And yes, that would be- And that hasn't happened yet. We haven't gotten there, right? So this is a Title IX enforcement action and the Secretary hasn't taken any of those more drastic steps of withholding funds or a cease and desist letter, but instead she's taken, I think, what the statute calls any other action authorized by law. And then Title IX says any agency action that's pursuant to 1682 is subject to judicial review as otherwise provided by law for similar agency action. And so then the question is just when the Secretary adds a condition like this onto grant funds because she thinks a school district is violating the law, where is judicial review for that, right? Because that as otherwise provided by law. Isn't that the question? No, Your Honor, we don't believe that that's the question because that presupposes that the Title IX procedure is the only avenue that the Secretary has for dealing with those who engage in sex discrimination. There are- No, no, she has other... It says any other action authorized by law, right? And so she has invoked 1226A1 and is imposing an additional condition because the department never cuts off funding, right? So there's this additional condition and attempting to get the school districts to work together. But it's a Title IX enforcement action, right? Isn't that what this is? So, Your Honor, there is a separate process that's still going for 1682. And the way that I read 20 U.S.C. 1683, the first sentence contemplates the completion of the process where there is something that's ultimately a final determination. That process is still ongoing. So the first sentence wouldn't apply. It's the second sentence that plaintiffs here seek to utilize as a cause of action under the APA. And that is, so basically for an appellate court to have jurisdiction over the first part, which is the completion of 1682, it would have to go through the agency administrative process. Right, right, right. For the appellate court to have jurisdiction, there'd have to be a hearing by an A.J. and all of that. But what I'm saying is that's what would happen if funds were withheld here. We're not at that point yet, but this is, the secretary has taken other action to enforce Title IX, to action short of withholding funds. That's the context here, right? Right, so in Sustainability Institute- And the plaintiffs are asking for multiple different kinds of relief. Some of the relief they're asking for may eventually be relief the district court doesn't have jurisdiction to give, right? If it comes to funds being withheld or grants being terminated. But why wouldn't the district court have jurisdiction over any part of this suit? I mean, what about the request to set aside the designation of the schools as high risk because they're violating Title IX? Yes, your honor. So I do have a couple of points on that. So one, the APA, going back to Sustainability Institute, one of the things that the lower court did is that it says they would prohibit the government from freezing, terminating, or otherwise interfering with the funding of grants. So when you look at those conditions, it's interfering with the grants that include the conditions as well. And that's what Sustainability Institute said the district court cannot do either. But that's just not what happened in Sustainability Institute. Their grants have been completely canceled and they wanted specific performance to reinstate those grants and pay them. It's hard for me to imagine going to the court of federal claims if your only claim is we're not violating Title IX, please make them remove this term from our contract. Like imagine they hadn't, maybe they overstated their case by claiming that this was about money that's actually not been withheld from them. But imagine that's their only claim is we're not violating Title IX, we're not high risk, remove this from our contract. You're saying that case goes to the court of federal claims? Yes, your honor. So one reason for that is the court of federal claims can issue limited injunctive relief, which is prospective in nature, if it's designed to fully effectuate the payment of the money. So 28 U.S.C. 1491A2 states that quote, to provide an entire remedy and to complete relief afforded by a judgment, the court may, and it goes on to say, issue orders directing and then what's applicable here, corrections of applicable records and such orders may be issued to any appropriate officials of the United States. So you're saying that's exclusive jurisdiction, no other court in the country has jurisdiction over a case about whether the school district is violating Title IX and is therefore high risk because the court of federal claims has exclusive jurisdiction over that subject matter. So your honor, if it's because, the reason that they're in court in the first place is because the high risk status doesn't allow them to get their payments on time. If you take that away, they wouldn't have been in court. And when you look at the reasons that they were seeking a TRO or a preliminary injunction, it was because they were believing that they were gonna have funding with health. So it goes back to what the essence of the contract is, where the source of the rights are. And I think we're in agreement that the source of the right to get paid on time comes from the grants themselves. And then the relief that they're seeking, the relief that they're seeking is ultimately to get paid on time, which is much different. And then even if you can separate the high risk designation from the repayment status, it runs into another problem that Justice Barrett also flagged in the NIH case, which is that it would be tough to describe that as final agency action subject to the APA. And the APA- Right, and there might be, I mean, for all I know, the secretary has discretion to add these terms and a court can't, there's nothing for a court to do about that, that there's no standards for us to apply to say that a particular school district is or isn't high risk, I don't know. But that's not an argument that the Court of Federal Claims has exclusive jurisdiction. That's an argument that the district court, once it exercises its jurisdiction, should look at that question and determine that maybe it can't go further with the case. So, Your Honor, we still believe that the claim is ultimately boiled down to money because the high risk designation is tied to the repayment status. So- Can I ask why you're focused on the question about whether it's money, as opposed to the Tucker Act, whether it's founded on the contract? I mean, I sort of thought the move that you would make would be to say it's founded on contract because they're trying to adjust the terms of the grant, which we treat as a contract. If instead, the secretary had done some other action unrelated to the grant with respect to finding a violation of Title IX, that would obviously be within the district court's authority, right? If it imposed some financial penalty or the like under 1682, but when the action taken is founded on contract, then it's the CFC's exclusive jurisdiction. That is correct, Your Honor. And that is another point that I was going to raise, which is that it ultimately goes toward the secretary adding an additional contract from the plaintiff's perspective that wasn't already there. And the result is them not getting paid on time. So that's when you go towards what the source of the grant right is and what the relief that they're seeking. And the other- Counsel, I'm sorry to interrupt, but your colleague on the other side, I think read off a litany of cases in the federal circuit where that result was foreclosed. Can you point to any case where on these facts, where the court of federal claims had exclusive jurisdiction and that was affirmed? So Your Honor, under 1683, I'm not aware of any cases that hit the federal circuit since these types of actions are a little bit rare. But what I can point to is that the CFC does have the ability to issue limited injunctive relief to- But why? So you keep going back to that. Why does that matter? I mean, it seems like Sustainability Institute and it's citation to this Pachak case, the Indian case, when Justice Kagan says, listen, if it's CFC and they don't have injunctive relief authority, that's totally fine, right? That's includes the exceptions to the remedies. Like, you know, maybe that's true, maybe it's not, but that seems sort of antecedent and unimportant. Yes, Your Honor. If it is sort of back to this question of, is the claim founded on contract when it's attempting to add a contractual term or is it not founded on contract for some other reason? But ultimately the question is, is the claim they're making founded on contract? And here, this is not sort of an enforcement action per se, but is instead, you know, a modification of the grant. And that modification of the grant is founded on contract. Yes, that's correct. Basically, there is an extra term that the, and the reason that we don't believe that this particular action qualifies as an enforcement action is because the secretary's using a separate authority to set the terms of payment, which does result in a change of condition on the grant. And that's ultimately why- I mean, I just want to understand what the department thinks this is, but the letters before adding the term made clear, this is a Title IX enforcement action. And then the letters imposing the new term said, if you don't change your ways, we, you know, we'll move on to more aggressive Title IX enforcement actions. I mean, they cited, you know, 16, what was it? 1682, 1683, like these, we can withhold funds, we can issue a cease and desist letter. So why isn't it, you said it's not a Title IX enforcement action because she decided to do something short of those remedies. Yes, Your Honor. And typically when we talk about other means as allowed by law, that's typically an instance where they refer it to the Justice Department for an affirmative Title IX case. And that's how- Well, typically that's one option. It says among other things, that's one illustration of something else the secretary can do, but I'm sure you wouldn't want to argue the secretary is limited to only certain means when the statute seems to give her broad discretion and her options of ways to enforce this law, right? So Your Honor, those are two separate things. So the 1682 process is still ongoing, but the secretary took separate action under the different statutory provision, which is what 1226A1 is. But the main issue is whether that has the effect that's contractual in nature. And one of the reasons why it's important is because the second sentence that talks about when someone has a cause of action under the ACA, it requires either a termination, refusal to grant or refusal to continue federal assistance. That's- You're right about that. But the other agency action, especially in the General Education Provisions Act, is left, there's no discussion of how that's reviewable, right? So usually the APA fills in the gap, right? So it's, if anything, the APA is the gap filler here. And then we're just back to the argument about, well, is the Tucker Act providing exclusive jurisdiction that muscles out the APA here? So Your Honor, we don't believe that the APA is a gap filler because when you read all the Tucker Act statutes, as far as when a claim is in contract with the United States it effectively gives the Court of Federal Claims exclusive jurisdiction over claims that are more than $10,000 against the United States. And it's also important because if Congress intended to remove Tucker Act jurisdiction for this specific type of contractual claim, it would have done so explicitly. And here, the judicial, it just says, for actions not otherwise subject to judicial review. And in Foreign versus Department of Agriculture, the Supreme Court noted, for instance, that the Agricultural Marketing Act of 1937 explicitly names the district court as the venue for taking claims against the USDA and thus withdraws Tucker Act jurisdiction affirmatively. 1683 does not contain any provision. So the idea would be that Congress doesn't override itself sub silentio. Congress knows how to channel things to a particular court. And when they use the term, not otherwise subject to judicial review, and then require the particular grant terminations or refusal to grant or continue federal assistance, those are the requirements for an APA action. And here, all you have is an APA action. And as plaintiffs claim under 1683, in 1683 is triggered either when you have a final action that withdraws funds under 1682, which subjects it to a hearing within the agency and then the appellate court, or an APA cause of action that's when you have the factors that's not otherwise subject to judicial review or, and the termination, refusal to grant or continue financial assistance, which this would not fit into. And as the plaintiff's bringing the case, they have the burden of demonstrating the subject matter jurisdiction of the court. And I see my time is running out, but I'm happy to answer any questions if the panel has any. I'll ask my colleagues if they have any others. Thank you very much. Mr. Haifey, you've got some rebuttal time. Thank you, Your Honor. I wanna start with Judge Richardson's question. The crucial question, which is whether or not this is a claim founded on contract or not, right? The court in Sustainability Institute and Solutions for Homegrown Connections cited the Megapulse case, the DC Circuit case. The determinative jurisdictional question, whether plaintiff's claim is at its essence contractual. And it looks to two things, the Megapulse test, the source of rights upon which the plaintiff bases its claims. And the type of- Wait, stop on that one. The basis for you getting money, reimbursement, non-reimbursement, advance, is all the grant, right? I mean, for that piece of Megapulse, right? Like it's the grant that is providing. And I understand you have an argument that the grant's not a contract, but I think that's a, given the precedent, that's a very hard argument for you. Set aside, Your Honor, that a grant isn't a contract. No, the underlying source here is Title IX. Again, there's no dispute that the- Wait, why does Title IX give you money, right? Title IX doesn't direct whether you get reimbursement or non-reimbursement, right? Or you get money at all. Like that's the grant. Yes, Your Honor, the grant does. But the interruption of the grant, the sole basis for that is the Department of Education's incorrect view that the divisions violate Title IX. That makes the source of the dispute Title IX, not the grant. There's no question about the terms of the grant. There's no allegation that Fairfax or Arlington have been in any way in violation of that other than this policy, which the department alleges violates Title IX. So the source- But that's the justification. So the government's action here, the department's action is to add terms to the grant, right? To make it more onerous. Yes. And their justification might be Title IX, but what they're doing is, in your view, making the grant more onerous. But that means that the claim is founded upon the grant, right? The grant is the source of what we're doing. The justification might well be some other statute, right? This is a similar argument was made in DOE and NIH that the conflict was with a statute. But what the court says is this still founded upon the grant. Yeah. Your Honor, just a question of sort of what source of rights means. The way I read that provision of the Megapulse case, it's not that every case involving a grant has to go to the Court of Federal Claims. That would essentially render 1683 a nullity. 1683 says that APA is the appropriate form for any agency action taken that terminates or refuses to grant or continue assistance. Under that absolutist reading of that first prong of Megapulse, that would essentially mean there's never APA relief. No, because the refusal to grant or to re-up this, that would not be founded upon a grant that exists, right? The refusal to give a grant is not founded upon a grant, right? It's once the grant is given and you're trying to mess with it, that makes it founded upon the grant itself. Your Honor, yes. Again, there is no question that the grant itself gives rise to the ultimate school nutrition funding and special education funding, which is threatened. But the reason it's threatened, again, and NIH's source of rights under Megapulse is Title IX. Again, that fundamental policy dispute and the type of relief sought, the second prong of Megapulse is not the repayment of grants because again, thankfully that money has not yet been withheld. It's the prospective determination of whether Title IX does or does not protect our policy. So under the Megapulse test relied upon by this court in those two recent cases, we believe that compels APA review here and separates this from the court federal claims. The other thing that separates this case is what Judge Rushing was putting her finger on, which is we have a jurisdictional provision, a direct provision, which says in matters of Title IX, the APA is appropriate when there is the threatened termination of federal funds. And otherwise, Judge Alston relied upon the provision of 1683 that says unless judicial review is otherwise available, as I have articulated previously, we don't believe that we have otherwise available relief because the case is not appropriate for the court of federal claims. Again, Your Honor, it is not appropriate for the court of federal claims because that sword has not fallen. We have not yet suffered the remedy. We're simply seeking the removal of that sword, a judicial determination that our interpretation of Title IX is consistent with law. I take my time. Can I just ask one follow up to that? Just help me understand. I mean, you might characterize what you're asking for by declaration or otherwise as sort of a reformation of the grant, right? Like make them take away this high risk provision and just help me understand why you think that is not founded upon the grant, but is instead, I think you would say founded upon Title IX. Yes. Your Honor, again, the terms of the grant have never changed. We were applying this policy for years under the School Nutrition Program, Title I, and that was viewed as completely consistent with law. But what has changed is that the new Department of Education has changed its position on Title IX. That's the only thing that's changed. The contract itself, the grant has not. So what we're seeking is adjudication of whether our adherence to Grimm and to Doe and to the clear precedent of this court is or is not correct. That is a substantive claim that under 1683 and the APA belongs in district court. My time is expired. Yes, Your Honor. Thank you very, very much for your time and attention. We appreciate it. I wanna thank both counsel for their fine arguments here this morning. As you know, by tradition, we typically come down from the bench and greet you. We can't do that, obviously, given where we are, but nonetheless, we really appreciate your being with us today remotely and appreciate your fine representation of your clients in this matter. With that, we'll move on to our second case.
judges: Albert Diaz, Julius N. Richardson, Allison J. Rushing